COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Kelsey and Senior Judge Hodges


LATOYLA ISHIA COOPER

                                              MEMORANDUM OPINION[*]
v.      Record No. 2693-04-1                       PER CURIAM
                                                MARCH 15, 2005
VIRGINIA BEACH DEPARTMENT
 OF SOCIAL SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                         A. Bonwill Shockley, Judge

          (Adrianne L. Bennett, on brief), for appellant.  Appellant submitting
          on brief.

          (Leslie L. Lilley; Nianza E. Wallace II, Associate City Attorney, on
          brief), for appellee.  Appellee submitting on brief.

          (Lorraine Baysek, Guardian *ad litem* for the infant child, on brief).
          Guardian *ad litem* submitting on brief.


     LaToyla Ishia Cooper appeals from the trial court's decision terminating her residual

parental rights to her minor child, pursuant to Code § 16.1-283(C)(2).  Cooper contends the trial

court erred in finding that she had been unwilling or unable within a reasonable time to substantially

remedy the conditions which led to the placement of her child in foster care.  We affirm the decision

of the trial court.

                                      BACKGROUND

     We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

proved that the child was born on June 2, 2002. On June 14, 2002, Cooper was visiting DeShawnda Gooding, a friend, and Gooding's mother. Gooding and her mother had a physical altercation, and Cooper left Gooding's apartment with her child. Cooper placed the child in a stroller that was made for an older child, and Cooper's child fell through a leg opening of the stroller down a flight of stairs. The child sustained a skull fracture from the fall and was later taken to the hospital. The Department of Social Services (DSS) found that the child's injury may have been the result of an accident, but took custody of the child on June 17, 2002 due to the lack of parenting skills, the condition of the home, and the apparent low functioning of Cooper.

In July 2002, April Clark, the child's foster care worker, developed a care plan for the child. The plan required that Cooper attend an approved parenting class, obtain stable housing,[1] obtain stable employment, attend a nutrition and safety program for parents, maintain contact with DSS, obtain a mental health assessment, and attend any necessary mental health therapy. Clark testified appellant completed the parenting class. Clark testified since Cooper did not have a birth certificate, she had a difficult time finding employment. Clark obtained a birth certificate for Cooper, but Cooper lost it. At some point, Cooper worked at a fast food restaurant for a short period of time. One month prior to the termination hearing, Cooper obtained a job at another fast food restaurant. Clark testified Cooper never attended the nutrition and safety program. Clark testified DSS provided bus tokens to Cooper for transportation for mental health services, but Cooper never completed the mental health assessment and never attended any mental health therapy. Clark testified Cooper's housing situation was sporadic and unstable and she did not always know where Cooper was living. At one point, Cooper moved to North Carolina with her

---

[1] The parental rights of Cooper's mother had been terminated when Cooper was a minor, but in June 2002 Cooper was living with her mother. Paulette Moore, an investigator with Child Protective Services, testified the residence was not an appropriate place for the child to live due to a ventilation problem. The care plan required Cooper to obtain stable housing independent of her mother.

mother and a home study found that the home was not appropriate for the child. DSS made a decision to allow Cooper more than one year to meet the goals of the care plan since she was in foster care as a minor and she expressed a desire to fulfill the requirements of the care plan.

Rebecca Mani, a social worker for the Department of Human Services, testified that on March 18, 2004, Cooper came to her office and asked for an appointment because the DSS sent her. Cooper told Mani that she had been on a variety of medications for bipolar disorder when she was a minor. Mani testified she obtained a psychological history and scheduled a second appointment with Cooper, however, Cooper did not keep the appointment. Cooper also failed to appear for a scheduled psychiatric evaluation.

Judy MacDonald, an employee with the juvenile court psychiatric program, testified she was appointed as an advocate for the child in June 2002. MacDonald testified that the child was "doing wonderfully" and was "a little ahead of the curve as far as intellect and developmentally."[2] MacDonald testified she had spoken to Cooper several times on the phone and saw her during three visitations at DSS. MacDonald testified she had not spoken to Cooper in five months because Cooper had moved and had left several phone numbers, but she was not able to talk to Cooper and Cooper never returned her calls. MacDonald testified she sent two letters to Cooper, but she never received a reply from Cooper.

Sue Skeleton, a social worker, supervised Cooper's visits with the child. Skeleton testified Cooper would become frustrated and anxious when the child was fussy. Skeleton explained that during one visit, she saw Cooper grab a stuffed animal and rip off a tag, and she also saw Cooper throw a large paper clip into a toy area where young children played.

---

[2] The child was initially placed with one foster family for five months and had been with the second foster family for the eighteen months prior to the termination hearing.

Cooper testified she leased an apartment three days prior to the termination hearing. Although there was no furniture in the apartment, she planned on obtaining some in a few days. Cooper testified she was employed at a fast food restaurant for approximately one month and had worked for a short time at another fast food restaurant. Cooper testified her mother could watch the child while she worked and an aunt had recently moved to the Eastern Shore and she might be able to help watch the child.

ANALYSIS

Cooper argues she substantially remedied the conditions that led to the placement of her child in foster care because she completed the parenting class, she completed a mental health assessment, she was employed and had obtained housing independent of her mother.

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence that (a) the termination is in the best interests of the child, (b) "reasonable and appropriate" services have been offered to help the parent "remedy substantially the conditions which led to or required continuation of the child's foster care placement," and, (c) despite those services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care." Because "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case," Ferguson v. Stafford Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992), we have held that the trial judge "must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338-39, 417 S.E.2d at 4 (citation omitted). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

In this case, clear and convincing evidence proved Cooper failed to remedy the conditions that led to the placement of the child into foster care. Although Cooper completed a parenting class and an initial mental health assessment, she failed to complete a nutrition and safety program, she failed to attend a second mental health appointment, and she failed to appear for a scheduled psychiatric evaluation. Cooper was required to obtain stable housing independent of her mother, but she leased an apartment only three days prior to the termination hearing and there was no furniture in the apartment. Cooper was required to obtain stable employment, but the evidence proved she worked at one job for approximately one month prior to the termination hearing and had another job for a short period of time. Cooper was required to maintain contact with DSS, but the evidence proved that Cooper moved frequently and failed to return phone calls and respond to letters. Despite completing the parenting class, Cooper demonstrated inappropriate parenting behaviors at supervised visitations. Cooper told a mental health professional that she was on medication for bipolar disorder when she was a minor, but Cooper failed to address her mental health issues as required by the care plan. The child had been in foster care for almost two years when the trial court held the termination hearing, and was "doing wonderfully." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that DSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2) and establishing that the termination of appellant's residual parental rights was in the child's best interest.

Affirmed.